## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALANA SOUZA a/k/a ALANA CAMPOS, LAURIE YOUNG a/k/a LAURIE ROMEO, VIDA GUERRA, EVA PEPAJ, JAIME EDMONDSON-LONGORIA, LUCY PINDER, PAOLA CANAS, URSULA SANCHEZ a/k/a URSULA MAYES and AMBER LANCASTER, | Civil Action No.: 19-cv-<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| vs. | |
| GULLIVER'S TAVERN, INC. d/b/a FOXY LADY TOO d/b/a FOXY LADY and PATRICIA TSOUMAS, | |
| Defendants. | |

Plaintiffs ALANA SOUZA a/k/a ALANA CAMPOS, LAURIE YOUNG A/K/A LAURIE ROMEO, VIDA GUERRA, EVA PEPAJ, JAIME EDMONDSON-LONGORIA, LUCY PINDER, PAOLA CANAS, URSULA SANCHEZ a/k/a URSULA MAYES and AMBER LANCASTER (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants GULLIVER'S TAVERN, INCORPORATED d/b/a FOXY LADY TOO d/b/a FOXY LADY (collectively "Defendants") and PATRICIA TSOUMAS respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Foxy Lady located in 318 Chalkstone Avenue, Providence Rhode Island 02908 ("Foxy Lady" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Rhode Island Gen. Law 1956, § 9-1-28 *et seq.* based on Defendants' willful and unauthorized use of each Plaintiff's image for advertising purposes;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant GULLIVER'S TAVERN, INCORPORATED is a corporation formed under the laws of the state of Rhode Island, with its principal place of business located at 318 Chalkstone Avenue, Providence Rhode Island 02908. GULLIVER'S TAVERN, INCORPORATED operates Foxy Lady, which is located at 318 Chalkstone Avenue, Providence Rhode Island 02908.

7.     Venue is proper in the United States District Court for the District of Rhode Island because Providence, Rhode Island is Defendants' principal place of business.

8.     A significant portion of the alleged causes of action arose and accrued in Providence, Rhode Island and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Providence, Rhode Island.

## PARTIES

### *Plaintiffs*

9.     Plaintiff Alana Souza a/k/a Alana Campos ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Laurie Young a/k/a Laurie Romeo ("Romeo") is a well-known professional model, and a resident of Orange County, California.

11.     Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Jaime Edmondson-Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

14.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, England.

15.     Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

16.     Plaintiff Ursula Sanchez a/ka/ Ursula Mayes ("Sanchez") is a well-known professional model, and a resident of Orange County, California.

17.     Plaintiff Amber Lancaster ("Lancaster") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

18.     According to publicly available records, defendant GULLIVER'S TAVERN, INCORPORATED is formed under the laws of the state of Rhode Island.  During times relevant to this action, GULLIVER'S TAVERN, INCORPORATED operated Foxy Lady in Providence, Rhode Island.

19.     According to publicly available records, and upon information and belief, PATRICIA TSOUMAS, in her capacity as principal, owner and/or CEO of GULLIVER'S TAVERN, INCORPORATED maintained operational control over Foxy Lady, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

20.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Foxy Lady.

23.     In the case of every Plaintiff, such appearance was false.

24.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

25.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

26.     Alana Souza a/k/a Alana Campos is a Brazilian model who started working as a model when she was only fifteen years of age. Ms. Campos was scouted by the director of Ford Models, which became her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at twenty years of age, where she is still currently represented by Wilhelmina Models. Ms. Campos has been published in Playboy, Ashtonish Mag, Viva Glam, and Bliss Mag. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for Arizona Foothills Magazine. In addition, Ms. Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

27.     That we know of, Campos is depicted in the photos in Exhibit "A" to promote Foxy Lady on its Instagram page. This Image was intentionally altered to make it appear that Campos was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was

otherwise associated or affiliated with the Club.

28.     Campos has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Laurie Young a/k/a Laurie Romeo may not be "the girl next door" but she is certainly the all California, bikini wearing, sun worshipping, beach girl. Ms. Young grew up on the Southern Californian coastline and did all the Californian things. Ms. Young was a cheerleader since the age of seven and continued through High School and beyond to competition and coaching juniors. Ms. Young's modeling and acting career has been achieved by natural growth and development from virtually being offered continual work while being on the beach or cheerleading. In the last few years things got a lot more hectic and serious with bigger jobs, parts on major TV series and magazine shoots. Ms. Young has contract work with Shirley's of Hollywood, is an ambassador and cheerleader for the NHRA drag racing series, shot the cover and is the 2015 Kandy Magazine model of the year and has done a number of TV commercials. The most famous one being the Late-night spokeswoman for Adam and Eve products that has become a bit of a cult favorite.

30.     That we know of, Romeo is depicted in the photos in Exhibit "B" to promote Foxy Lady on its Instagram and Facebook pages. This Image was intentionally altered to make it appear that Romeo was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

31.     Romeo has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Vida Guerra is a Cuban model who currently lives the United States. While growing up, she entered several fashion shows modeling swimwear and has appeared in dozens of music videos. Her first national exposure came when she appeared in a lingerie spread for FHM in December of 2002. The magazine later reported that following its publication, almost one third of their mail was from readers demanding more photos of her. She was called back for more photo shoots and became "FHM's Model of the Year" in 2004. Since then, Ms. Guerra has been featured in many magazines, including DUB, Smooth, Escape, and Open Your Eyes, often as the cover model. Ms. Guerra has made multiple appearances on several Spanish language television programs such as entertainment gossip show, El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also became a staple in music videos, appearing in "Shake Ya Tailfeather" (Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003) and "The New Workout Plan" (Kanye West, 2004), in "Obsession (No Es Amor)" (Frankie J ft. Baby Bash, 2005), among others. In addition, Ms. Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on Chappelle's Show, and the film, National Lampoon's Dorm Daze 2. She lent her voice to the video game, Scarface: The World Is Yours. In 2005, Ms. Guerra was voted Number 26 in FHM's "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She has produced her own swimsuit calendars (and accompanying "behind the scenes" DVDs) and a 2006 DVD titled, Vida Guerra: Exposed. She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, TV shows, and movies. Ms. Guerra enjoys over 585,777 Instagram followers, over 1.5 million Facebook likes, and 274,117 Twitter followers.

33.     That we know of, Guerra is depicted in the photo in Exhibit "C" to promote Foxy Lady on its Instagram page. This Image was intentionally altered to make it appear that Guerra was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

34.     Guerra has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Eva Pepaj is also a successful model and actress who moved to Hollywood in 2004 to pursue her acting and modeling career. She is known for her roles in the movies: The Hand Off (2009), Interior, Leather Bar, (2013) and The Romp (2011). Eva was a feature in a national Diet Coke TV commercial. Eva is a professional model working model and actress and her work includes from runways to high fashion, to print and film.

36.     That we know of, Pepaj is depicted in the photos in Exhibit "D" to promote Foxy Lady on its Instagram page. This Image was intentionally altered to make it appear that Pepaj was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

37.     Pepaj has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Jaime Edmondson-Longoria comes from a family of police officers. Ms. Edmondson-Longoria graduated from Florida Atlantic University with a degree in Criminal

Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting the police force to become a cheerleader for the Miami Dolphins. Ms. Edmondson-Longoria and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Ms. Edmondson-Longoria was the Playmate of the Month in the January 2010 issue of "Playboy." She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets. Ms. Edmondson-Longoria and her husband, MLB Superstar Evan Longoria, have 2 children

39.     That we know of, Longoria is depicted in the photos in Exhibit "E" to promote Foxy Lady on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

40.     Longoria has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Lucy Pinder is, and at all times relevant to this action, an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Ms. Pinder has featured in publications such as FHM, Nuts, Loaded and the Daily Star, and hundreds of others. Ms. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007. Ms. Pinder was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of Nuts magazine cover. Ms. Pinder has collaborated with major

brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Ms. Pinder was also a contestant on Celebrity Big Brother. Ms. Pinder had starring roles in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms. Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

42.     That we know of, Pinder is depicted in the photo in Exhibit "F" to promote Foxy Lady on its Instagram page. This Image was intentionally altered to make it appear that Pinder was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

43.     Pinder has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Paola Canas is a Colombian born model now residing and working in the United

States. Ms. Canas has been in the industry for over twelve years and has found great success as a

model, host, runway model, and actor. Ms. Canas has worked runway shows in her native

Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She

heads up the international campaign and was a contracted model for Curve and their worldwide

lingerie line. In Dubai, United Arab Emirates, Ms. Canas was chosen as the face of the Masters

Gold Tournament, and was the image for the "International Surf and Sport Expo" in Orlando,

FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon

International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like

"FOX Sports" and on TV networks such as Telemundo and TV Azteca. Ms. Canas continues to

build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and

Los Angeles, CA. Ms. Canas has 497,366 Instagram followers, 7,125 followers on Twitter, and

over 9,534 Facebook likes.

45.     That we know of, Canas is depicted in the photos in Exhibit "G" to promote Foxy

Lady on its Facebook, Instagram, and Website pages. This Image was intentionally altered to

make it appear that Canas was either a stripper working at Foxy Lady, that she endorsed the

Club, or that she was otherwise associated or affiliated with the Club.

46.     Canas has never been employed at Foxy Lady, has never been hired to endorse

Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue

to suffer, damages as a result of same.

47.     Ursula Sanchez a/k/a Ursula Mayes is a model whose career started when her

photos won first place in prestigious photography awards and a spread in Maxim magazine. She

is well known as a "suitcase model #5" from the hit game show Deal or No Deal. Ms. Mayes has

appeared on Minute To Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, Elle, In Style, Cosmopolitan, and Marie Claire, to name a few. Ms. Mayes is currently a cover model and a star of the game Juiced 2: Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

48.    That we know of, Mayes is depicted in the photo in Exhibit "H" to promote Foxy Lady on its Instagram page. This Image was intentionally altered to make it appear that Mayes was either a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

49.    Mayes has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.    Amber Lancaster joined The Price is Right in 2008. She was crowned Miss Washington Teen USA, and went to join the Sea Gals, the Seattle Seahawks famed cheerleading squad. Following five years on the squad, she moved to Los Angeles to pursue her entertainment career. In addition to her role on The Price is Right, Amber co-starred as Jenny Swanson on MTV's The Hard Times of RJ Berger. She has appeared on episodes of Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, and Entourage. In addition, she has appeared as herself on Attack of the Show, The Scream Awards, and The Best Damn Sports Show Period. She also has appeared in the feature film Redline. Amber has been featured in numerous magazine spreads and fashion features in Maxim, US Weekly, People, Stylewatch, Life & Style and Star.

She has also been featured as part of Maxim's annual "Hot 100" list.

51.     That we know of, Lancaster is depicted in the photo in Exhibit "I" to promote Foxy Lady on its Instagram page. This Image was intentionally altered to make it appear that Lancaster was either a stripper working at Foxy Lady that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

52.     Lancaster has never been employed at Foxy Lady, has never been hired to endorse Foxy Lady, has never been otherwise associated or affiliated with Foxy Lady, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

53.     Upon information and belief, Defendants operated, during the relevant time period, Foxy Lady, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

54.     Upon information and belief, and in furtherance of its promotion their promotion of Foxy Lady, Defendants own, operate and control Foxy Lady's social media accounts, including its Facebook, Twitter, and Instagram accounts.

55.     Defendants used Foxy Lady's Facebook, Twitter, and Instagram accounts to promote Foxy Lady, and to attract patrons thereto.

56.     Defendants did this for their own commercial and financial benefit.

57.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Foxy Lady, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

58.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Foxy Lady to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

59.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Foxy Lady and at no point have any of the Plaintiffs ever endorsed Foxy Lady, or otherwise been affiliated or associated with Foxy Lady.

60.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

61.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

62.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

63.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are

for 1, 2, or 3-year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

64.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Foxy Lady by and through various marketing and promotional mediums including, without limitation, Foxy Lady's website, Twitter, Facebook, and Instagram.

65.     Defendants showcased Plaintiffs' Images on Foxy Lady's social media pages to create the false impression that Plaintiffs worked at Foxy Lady, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

66.     Defendants did so to attract clientele to Foxy Lady, promote Foxy Lady, and thereby generate revenue for Defendants.

67.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Foxy Lady.

68.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

69.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

70.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

71.     At no point were any of the Plaintiffs ever affiliated with Foxy Lady, or Defendants.

72.     Each of Plaintiffs' Images was used without her consent.

73.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

74.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

75.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Foxy Lady website, Twitter, Facebook, or Instagram accounts.

76.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

77.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

78.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

79.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

80.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Foxy Lady, or agreed to appear in Foxy Lady's advertisements.

81.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

82.     Upon information and belief, said deceptive advertisements had a material effect

on the purchasing decisions of consumers who attended Foxy Lady.

83.    Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

84.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

85.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

86.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

87.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

88.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

89.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

90.    Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Foxy Lady, or worked at, sponsored, or approved of Foxy Lady's goods, services or commercial

activities.

91.    This was done to promote and attract clientele to Foxy Lady, and thereby generate revenue for the Defendants.

92.    Thus, this was done in furtherance of Defendants' commercial benefit.

93.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Foxy Lady, nor worked at, sponsored, or approved of Foxy Lady's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Foxy Lady.

94.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

95.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

96.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Rhode Island Gen. Law § 9-1-28.1 - Right to Privacy)**

97.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

98.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

- 18 -

99.     Each Plaintiff has a right to not have her likeness appropriated for any purpose without her express consent.

100.    Each Plaintiff likewise has a right to be secure from publicity that reasonably places her in a false light before the public;

101.    Each Plaintiff likewise has a right to be free from publication of a false or fictitious fact which implies an association which does not exist;

102.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Foxy Lady's advertising.

103.    Defendants did so without any Plaintiff's consent, written or otherwise.

104.    An association with a strip club like Foxy Lady would be objectionable to the ordinary reasonable person.

105.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

106.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product for the benefit of the Defendants.

107.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

108.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

109.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

110. In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute, Plaintiffs are entitled to the reasonable attorneys' fees incurred prosecuting this action.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Publicity)

111. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

113. Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

114. As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

115. Defendants did so without any Plaintiff's consent, written or otherwise.

116. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

117. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

118. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or

- 20 -

on any other medium, in order to promote the Club.

119.   At no point did Defendants ever compensate Plaintiffs for its use of their Images.

120.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

121.   In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Rhode Island Gen. Law § 9-1-28 - Unauthorized use of name, portrait, or picture)**

122.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

123.   As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

124.   Each Plaintiff has a right to not have her likeness appropriated for any purpose without her express consent.

125.   Each Plaintiff likewise has a right to be secure from publicity that reasonably places her in a false light before the public;

126.   Each Plaintiff likewise has a right to be free from publication of a false or fictitious fact which implies an association which does not exist;

127.   As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Foxy Lady advertising.

128.   Defendants did so without any Plaintiff's consent, written or otherwise.

129.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

130.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

131.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

132.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

133.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

134.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute, said damages should be trebled based on Defendants' knowing and willful conduct as described herein.

## SIXTH CAUSE OF ACTION
### (Defamation)

135.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

136.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

137.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

138.     None of these representations were true.

139.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

140.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

141.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

142.     Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

143.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Rhode Island law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

144.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

145.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per*

*se* under Rhode Island law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

146.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

147.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

148.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

149.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

150.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

151.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

152.    Defendants breached their duty of care to both Plaintiffs and consumers by failing

to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

153.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Rhode Island law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

154.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

155.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

156.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

157.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

158.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

159.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

160.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

161.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

162.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

163.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

164.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

165.     Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

166.     Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

167.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

168.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

169.     Plaintiffs are each internationally known models who earn their livings appearing

in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

170.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

171.   Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

172.   Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' willful misappropriation of Plaintiffs' publicity and property rights;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C. § 1117 and Rhode Island's statutory right to privacy; and,

(e) For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

PLAINTIFFS,

By their Attorneys,


/s/ Paul V. Sullivan
/s/ Glen R. Whitehead_____
Paul V. Sullivan, #5712
Glen R. Whitehead, #6163
Sullivan Whitehead & DeLuca LLP
86 Weybosset Street, Suite 400
Providence, RI 02903
Tel:  (401) 861-9900
Fax:  (401) 861-9977
psullivan@swdlawfirm.com
gwhitehead@swdlawfirm.com

*and*


/s/ John V. Golaszewski_____
John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*


Dated:  September 20, 2019___